## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| JAMAL A. MORTON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:20-cv-0109 |
| v. | ) ) | |
| THE UNITED STATES VIRGIN ISLANDS, The Honorable ALBERT BRYAN, JR., in his official capacity as the Governor of the United States Virgin Islands, JOEL A. LEE, in his official capacity as the Director of the Bureau of Internal Revenue, CLARINA MODEST ELLIOT, in her official capacity as the Commissioner of the Department of Finance, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**APPEARANCES:**

**Joseph A. DiRuzzo, III, Esq.**
DiRuzzo & Company
Ft. Lauderdale, FL
    *For Jamal Morton,*

**Ariel Marie Smith-Francois, Assistant Attorney General**
**Christopher M. Timmons, Assistant Attorney General**
Virgin Islands Department of Justice
St. Thomas, VI
    *For the Defendants*

## <u>MEMORANDUM OPINION</u>

**MOLLOY, J.**

    Plaintiff, Jamal A. Morton ("Morton"), an incarcerated individual at the Golden Grove Adult Correctional Facility[1] located in St. Croix, U.S. Virgin Islands, commenced this litigation

---

[1] This facility is maintained by the Virgin Islands Bureau of Corrections ("BOC").

on behalf of himself and other similarly situated individuals, against the United States Virgin Islands and other officials of the Government of the Virgin Islands in their official capacities (collectively "GVI"), seeking payment of the advance refund under the Coronavirus, Aid, Relief, and Economic Security Act of 2020, Pub. L. No. 116-136, 134 Stat. 281 (2020). Morton also sought a preliminary injunction, *inter alia*, to enjoin the Virgin Islands Bureau of Internal Revenue from refusing to pay him and other incarcerated individuals the advance refund prior to December 31, 2020. *See* 26 U.S.C. § 6428 (f)(3)(A) ("No refund or credit shall be made or allowed under this subsection after December 31, 2020.")

During the course of the preliminary injunction proceedings, the evidence revealed that Morton did not file an income tax return until after the commencement of this lawsuit. Subsequently, at the conclusion of the preliminary injunction hearing, the Court directed the parties to brief the issue as to whether Morton had standing to bring his claims. The GVI, thereafter, filed a motion to dismiss for lack of subject matter jurisdiction. Morton filed an opposition and the GVI filed a response thereafter. Upon a full consideration of the arguments made by the parties and the relevant legal authority, the Court concludes that it lacked subject matter jurisdiction at the time this lawsuit was filed and therefore, the complaint will be dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The CARES Act

The Coronavirus Aid, Relief, and Economic Security Act of 2020 (the "CARES Act" or the "Act") was passed by Congress and signed into law by President Trump on March 27, 2020, to provide economic relief to certain individuals who reside in the United States (including the U.S. Virgin Islands) during the COVID-19 pandemic. The Act was designed to provide direct economic assistance payments, the amount of which is based on the tax filing status of each eligible individual and the number of qualifying children they have, if any.[2] The Act defines an "eligible individual" as "any individual other than any nonresident alien

---

[2] Individuals whose income was less than $75,000 (or $150,000, in the case of joint filers) qualify for EIP benefits of $1,200 (with joint filers receiving $2,400). Eligible taxpayers receive an additional $500 benefit for each qualifying child. EIP benefits were to be paid to recipients by the same method they normally receive benefits and tax refunds, whether by check or direct deposit. 26 U.S.C. § 6428(c).

individual," any individual with respect to whom cannot be claimed as a deduction on another taxpayer's income tax return, and "an estate or trust." *See* 26 U.S.C. § 6428(d).

The portion of the CARES Act relevant to this litigation amended the Internal Revenue Code providing for Economic Impact Payments ("EIP") to be paid directly to eligible individuals through a "tax credit" to be paid in 2021 based on an individual's 2020 income tax return, *see* 26 U.S.C. § 6428(a), or as an "advance refund" to be paid on or before December 31, 2020, based on an individual's 2019 income tax return. *See Id.* at § 6428(f). If an eligible individual had not filed a 2019 tax return, that individual would still be eligible to receive an advance refund based on that person's 2018 tax return. *Id.* at § 6428(f)(5)(A). If an individual had not filed a 2018 tax return, the appropriate taxing authority could use information provided in Form SSA-1099 or Form RRB-1099, with respect to that individual receiving social security benefits. *Id.* at § 6428(f)(5)(B).

The Internal Revenue Service ("IRS"), the agency tasked with administering the distribution of EIP benefits to U.S. tax filers, provides advance refunds to individuals who have filed a tax return for either the 2018 or 2019 tax year and to those already receiving social security benefits, without taking any additional action to receive the advance refund. Persons who did not file a tax return for tax years 2018 or 2019 ("non-filers") may go to a web-based portal the IRS set up for non-filers to provide their information in order to receive the EIP advance refund. (ECF Nos. 22 at 4, 37 at 3.) Non-filers and other individuals who do not receive an advance refund may claim their EIP tax rebates by filing a 2020 tax return in 2021.

Tax filers residing in the U.S. Virgin Islands ("USVI") receive EIP benefits from the GVI through the Virgin Islands Bureau of Internal Revenue ("BIR") and Virgin Islands Department of Finance, rather than from the IRS, due to the USVI Mirror Code tax system, 48 U.S.C. § 1397,[3] and pursuant to Section 2201 of the CARES Act. Pursuant to Section 2201(c)(1)(A), the U.S. Treasury pays the USVI the amount equal to the EIP benefits issued

---

[3] "The income-tax laws in force in the United States of America and those which may be hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands." 48 U.S.C. § 1397. "This statutory scheme has come to be known as the mirror code because Congress designed Virgin Islands tax law to mirror the tax laws in effect on the mainland." *Cooper v. Comm'r of Internal Revenue*, 718 F.3d 216, 219 (3d Cir. 2013).

by the territory under an implementation plan agreed upon with the U.S. Department of the Treasury. As such, individuals in the USVI who have not filed tax returns for 2018 or 2019 are not able to use the IRS's online portal to register for benefits. Instead, the BIR has established an alternative process by which non-filers may register for EIP advance refunds: "individuals who are eligible for the EIP, but did not have a [tax return] filing obligation" should "'fill out the 2018 Form 1040. . . [and w]rite "FOR STIMULUS CHECK" on the top of the return'" and submit the returns to the BIR for processing. (ECF No. 22 at 8.)

"'[A]ny individual other than—(1) any non-resident alien individual, (s) any individual with respect to whom a deduction under section 151 is allowable to another taxpayer . . . , and (3) an estate or trust'" is eligible for EIP benefits under the CARES Act. 26 U.S.C. § 6428(d). Although the CARES Act does not exclude incarcerated individuals from eligibility for EIP benefits, the IRS website announced on May 6, 2020, that incarcerated individuals do not qualify for payments under the CARES Act. (ECF No. 22 at 4-5.) The IRS requested that any incarcerated individuals who received EIP checks return them to the IRS, and thereafter withheld additional payments from being made to incarcerated persons. *Id.* at 4-7.

In response to this change in policy of the IRS, on August 8, 2020, Colin Scholl brought a class action suit against the United States in the Northern District of California, "contesting the IRS's position that incarcerated individuals are not eligible for the EIP under the CARES Act. *Scholl et al. v. Mnuchin*, no. 4:20-cv-5309[-PJH, 2020 WL 5702129] (N.D. Cal. Sept. 24, 2020)." *Id.* at 10. The *Scholl* class consists of:

> All United States citizens and legal permanent residents who:
> (a) are or were incarcerated . . . at any time from March 27, 2020[,] to the present;
> (b) filed a tax return in 2018 or 2019, or were exempt from a filing obligation because they earned an income below $12,000 . . . ;
> (c) were not claimed as a dependent on another person's tax return; and
> (d) filed their taxes with a valid Social Security Number . . . .
> Excluded from the class are estates and trusts; defendants; the officers, directors, or employees of any defendant agency; and, any judicial officer presiding over this action and his/her immediate family and judicial staff.

*Id.* at 11; *Scholl* at *25. On September 24, 2020, the district court granted a preliminary injunction and class certification. On October 14, 2020, the court granted a permanent injunction against the United States and "certified the class for all purposes." *Id.* at 11.

Although the CARES Act applies to the USVI through the Mirror Code, "[t]he *Scholl* class does not include incarcerated individuals in the USVI by operation of 26 U.S.C. § 7701(a)(9)." *Id.* at 11. Thus, on October 27, 2020, counsel for Morton sent a letter to. Joel Lee, the Director of the Bureau of Internal Revenue, inquiring "as to whether the BIR shares the same view as the IRS regarding the CARES Act in general, and the EIP in particular, applied to incarcerated individuals." *Id.* at 12; *see* ECF No. 22-7. In his correspondence to Director Lee, Morton emphasized that "time was of the essence because the EIP must be issued 'as rapidly as possible,' 26 U.S.C. § 6428(f)(3), and that '[n]o refund or credit shall be made or allowed under this subsection after December 31, 2020.'" (ECF Nos. 22 at 12, 22-7 at 2.)

Upon not receiving a reply to his inquiry by November 3, 2020, Morton concluded that the GVI held the same position as the IRS—namely that incarcerated persons were not eligible for EIP benefits—whereupon Morton filed this action.

### B. The Complaint

On November 3, 2020, Morton filed the instant action against the GVI "to challenge Defendants' . . . unauthorized and unlawful refusal to issue [advance] Economic Impact Payments ("EIP") . . . under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act" to persons incarcerated in the USVI.[4] (ECF No. 1 at 1.) In the complaint, Morton discloses that he is a U.S. citizen and USVI resident who has been under custody of the Bureau of Corrections ("BOC") since 2009. Morton stated that he has not filed a tax return for over a decade because he "did not have a filing requirement since his income was below the gross income exclusion," pursuant to 26 U.S.C. § 6012(a)(1)(A). *Id.* at 3. Morton alleges that he has not received an EIP from the BIR.

---

[4] On November 9, 2020, Morton filed a Notice to Substitute Party, giving notice that Callwood was no longer the Commissioner of the Department of Finance ("DOF") and substituting Clarina Modest Elliot as a defendant in the case. On even date, Morton filed an Amended Complaint, amending only the person named as Commissioner of the DOF. (ECF No. 22.)

As mentioned above, Morton filed a motion for preliminary injunction on November 4, 2020, seeking to enjoin the GVI from not issuing EIP benefits to incarcerated individuals in the custody of the BOC. (ECF No. 5.) The GVI filed an Opposition to the motion on November 20, 2020. (ECF No. 37.) On November 24, 2020, the Court held an evidentiary hearing on the matter in which Morton disclosed that he had not filed a tax return in 2018, 2019, or 2020. Morton is also not a social security benefits recipient. Following testimony and oral argument about the BIR's Economic Impact Payment Implementation Plan ("the Plan"), the hearing was continued to allow time for the GVI to provide Morton and the Court with a fully executed copy of the Plan.

On December 1, 2020, Morton filed a copy of his 2019 income tax return, showing a submission date of November 16, 2020. (ECF No. 50-1.) On December 7, 2020, the Court held a telephonic status conference and set the continuation of the evidentiary hearing on the motion for preliminary injunction. In said hearing on December 14, 2020, the GVI announced that it was no longer taking the position that the U.S. Treasury would not reimburse any EIP benefits paid to incarcerated individuals. As such, the Implementation Plan was amended on December 11, 2020, to allow for payments to incarcerated persons who qualify for same. Therefore, all returns previously filed were to be processed and paid on December 23, 2020. The GVI also represented that it would issue an EIP benefit to Morton, if he qualifies, prior to December 31, 2020.[5] During the proceeding, the Court raised the jurisdictional issue of standing and requested that the parties brief whether Morton had standing to bring the case when he filed the complaint.[6]

The GVI filed a Motion to Dismiss for Lack of Jurisdiction on December 14, 2020. (ECF No. 80.) The next day, Morton filed a Response in Opposition to the GVI's motion to dismiss. (ECF No. 85.) On December 17, 2020, the GVI filed a Reply to Morton's Brief in Opposition. (ECF No. 88.). The Court finds that this matter is fully briefed and is ripe for resolution.

---

[5] As of the issuance of this Memorandum Opinion, the parties have not notified the Court as to whether the GVI has issued an advance refund to Morton.

[6] "[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also Bryan v. Turnbull*, 219 F.sipp.2d 386, 388 (D.V.I. 2003) ("The Court cannot address the merits of [a plaintiff's] claim unless it first determines it has jurisdiction.").

## II.    LEGAL STANDARD

A motion to dismiss for lack of standing is properly brought under Federal Rules of Civil Procedure Rule 12(b)(1) because standing is jurisdictional. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Ballentine v. United* States, 486, F.3d 806, 810 (3d Cir. 2007); St. *Thomas – St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000). Pursuant to Rule 12(b)(1), a defendant may present a challenge to the court regarding the plaintiff's standing to bring a claim in federal court . *Ballentine* 486 F.3d at 810; *Arrington v. Color Tyme, Inc.*, 972 F. Supp. 2d 733, 738 (W.D. Pa. 2013) (explaining that Rule 12(b)(1) allows a defendant to move to dismiss a complaint for lack of subject matter jurisdiction, which may be challenged based on lack of standing of the plaintiff) (citing *ACLU-NJ v. Township of Wall* 246 F.3d 258, 261 (3d Cir. 2001) (concluding that if the plaintiff does not have Article III standing, the federal court lacks subject matter jurisdiction and cannot adjudicate the merits of the case).

Such a challenge may take the form of either a facial or a factual attack. A facial challenge under Rule 12(b)(1), like a Rule 12(b)(6) motion to dismiss for failure to state a claim, requires that the court "consider the allegations of the complaint as true" in its analysis. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual challenge, on the other hand, the defendant attacks the factual bases for jurisdiction that are alleged in the complaint by presenting competing facts. *Davis v. Wells Fargo*, 824 F.3d at 346; *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As such, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Mortensen,* 549 F.2d at 891); *HWI Partners, LLC v. Choate, Hall & Stewart LLP*, No. 13-918-RGA-MPT, 2013 U.S. Dist. LEXIS 174942, at *10 (D. Del. Dec. 11, 2013) ("Defendants' challenge to [Plaintiff] represents a factual attack on subject matter jurisdiction because it is based on underlying facts or evidence outside the complaint, which the court may consider.")

With regard to the timing as to when a party must demonstrate when the Court had jurisdiction, "[i]t is a fundamental principle of American jurisprudence that before a party may bring a case before a court, he must have standing to do so." *Lujan v. Defender of Wildlife*, 504 U.S. 555, 560 (1992); *see also Grupo Dataflux v. Atlas Golb. Grp., L.P.*, 541 U.S. 567, 570-

71 (2004) ("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'") (citations omitted). Moreover, it is well settled that "[t]he party invoking federal jurisdiction bears the burden of proving standing." *Lujan*, 504 U.S. at 561.

## III.   DISCUSSION

The GVI argues in its motion to dismiss that the Court lacks subject matter jurisdiction because the CARES Act requires an individual to first file a tax return in order to be eligible to receive an advance refund under section 6428(f) of the Internal Revenue Code. Therefore, the GVI argues, because Morton did not file a tax return prior to commencing this lawsuit, he lacks standing to claim any benefits under the CARES Act. The Court agrees.

The Supreme Court "established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact," . . . which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Further, the plaintiff "must satisfy the 'causation' and 'redressability' prongs . . . by showing that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Whitmore*, 495 U.S. at 155-56. "The party invoking federal jurisdiction bears the burden of establishing these elements." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *ACLU-NJ*, 246 F.3d at 261 (affirming that the plaintiff bears the burden of proof that he has standing to bring the claim).

It is established law that a plaintiff must have Article III standing to bring a case before the complaint is filed. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."); *Covington v. Jefferson County*, 358 F.3d 626, 637 (9th Cir. 2004); *Lujan*, 504 U.S. at 569 n. 4 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (quoting *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)). Such standing is essential to establish the court's subject matter jurisdiction over the case. *Arrington*, 972 F. Supp. 2d at 739 ("Absent standing, and by extension, subject-matter jurisdiction, the court does not possess the power to decide the case, and any disposition it renders is a nullity.")

(citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines*, 673 F.2d 700, 711 (3d Cir. 1982)). However, "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *United States v. Mine Workers*, 330 U.S. 258, 291 (1947)); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).

While Morton satisfies the definition of an "eligible individual" under section 6428(d) because he is not a nonresident alien, not a person with respect to whom another individual can claim a deduction on a tax return, and obviously is not an estate or trust, the CARES Act clearly contemplates an additional requirement: the filing of a tax return in order to receive an EIP advance refund.

The Court finds instructive the Third Circuit Court of Appeals case of *Golden v. V.I.*, 47 Fed. Appx. 620 (3d Cir. 2002). In that case, the Third Circuit analyzed the Economic Growth and Tax Relief Reconciliation Act of 2001 (the "Economic Act"), a statute with remarkably identical language as the statute under consideration in this case. Section 6428 of the Economic Act entitled "Acceleration of 10 Percent Income Tax Rate Bracket Benefit for 2001" lowered the tax rate from fifteen percent to ten percent for the first $6,000 of an individual's taxable income.[7] Although the Act was signed into law in June of 2001, the legislation made the tax rate retroactive to January 1, 2001, as a means to stimulate the economy. Similar to the CARES Act, the Economic Act authorized an advance tax refund payment to most taxpayers, in the form of a refund check. The rebate amounts representing five percent of eligible income were based on the income reported on the previous year's tax return. No advance refund payments would issue after December 31, 2001, but if an individual did not receive an advance refund in 2001, she could claim the rebate by filing a 2001 tax return in 2002. *Golden*, 47 Fed. Appx. at 621 ("If a taxpayer did not receive her full refund or received no refund at all before that date, she could claim a "rate reduction credit" on her tax year 2001 returns. See H.R. Conf. Rep. No. 107-84, at 126-27 (2001) (describing the rate reduction credit and advance refund mechanisms.")).

"The Mirror Code," 48 U.S.C. § 1397, made the Economic Act applicable to the US Virgin Islands, but soon after the plan was enacted, the BIR "announced that, due to

---

[7] The Act correspondingly lowered the tax rate for the first $10,000 of income for heads of households and the first $12,000 for married couples.

budgetary and administrative constraints, it could not process the refunds prior to the December 31st deadline." *Id.* at 621. In response, Plaintiff Golden filed a complaint in district court seeking an injunction to compel the BIR to issue the rebates as directed under the Act. The District Court denied injunctive relief, after which Golden appealed to the Third Circuit.

On appeal, the Third Circuit limited its analysis to the issue of whether Golden had standing to file the complaint: "we need only address the threshold jurisdictional issue of Golden's standing. To qualify for an advance refund, and thereby show standing to challenge the [USVI ]BIR's decision, Golden must establish that she filed a return for tax year 2000 and was otherwise fully eligible for an advance refund." *Golden*, 47 Fed. Appx. at 622.

The Third Circuit noted that the parties had stipulated that Golden had filed a tax return during the district court case, but the court had not inquired further as to the filing. Thus, there was no record evidence by which the Third Circuit could evaluate Golden's standing to bring the case. The Third Circuit held that "standing is an Article III requirement for jurisdiction." As such, parties may not stipulate to standing. *Id.* Despite the BIR's announcement that it would not be processing any refunds prior to December 31, the Third Circuit remanded to the district court for further development of the record regarding the "threshold jurisdictional issue of Golden's standing" to file the claim. *Id.*

Here, the mechanisms whereby EIP advance refunds are paid under the CARES Act, 26 U.S.C. § 6428 (2020), are analogous to those of the advance refund payments under the Economic Act of 2001, 26 U.S.C. § 6428 (2000). Indeed, the wording and structure of the statutes are very similar and each refer to filings, tax years, and filing status, such as in the following subsection excerpts:

> Sec. 6428 ACCELERATION OF 10 PERCENT INCOME TAX RATE BRACKET BENEFIT FOR 2001
> (a) *In General. – In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by* chapter 1 *for the taxpayer's first taxable year beginning in* 2001 *an amount equal to* 5 percent of so much of the taxpayer's taxable income as does not exceed the initial bracket amount(as defined in section 1(i)(1)(B)).

Economic Act of 2001, 26 U.S.C. § 6428 (2000) (emphasis added).

> § 6428. 2020 Recovery rebates for individuals
> *(a) In General. –*

> *In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by* subtitle A *for the first taxable year beginning in* 2020 *an amount equal to* the sum of –
> (1) $1,200 ($2,400 in the case of eligible individuals filing a joint return), plus
> (2) an amount equal to the product of $500 multiplied by the number of qualifying children (within the meaning of section 24(c) of the taxpayer.

EIP benefits under the CARES Act of 2020, 26 U.S.C. § 6428 (2020) (emphasis added).

Pursuant to 26 U.S.C. § 6428 of both the 2001 Economic Act and the 2020 CARES Act, eligible individuals may receive a tax credit as an advance refund issued by December 31st. While neither Act specifies that the filing of a tax return is a requirement, both refer to the previous year's tax returns as the mechanism through which the amount of the payment will be determined. And in both Acts, individuals who do not receive an advance refund issued before December 31 may claim the same payment as a refund or rebate after the new year— by filing a tax return. In the case of EIPs under the CARES Act, the IRS and BIR may also use Social Security information to process payments to taxpayers who are non-filers but who receive Social Security benefits:

> Advance Refunds and Credits
>   (5) Alternate Taxable Year
> In the case of an individual who, at the time of any determination made pursuant to paragraph (3), has not filed a tax return for the year described in paragraph (1), the Secretary may –
> (A) apply such paragraph by substituting "2018" for "2019", and
> (B) if the individual has not filed a tax return for such individual's first taxable year beginning in 2018, use information with respect to such individual for calendar year 2019 provided in –
> (i) Form SSA-1099, Social Security Benefit Statement, or
> (ii) Form RRB-1099, Social Security Equivalent Benefit Statement.

26 U.S. Code § 6428(f) (2020). A plain language reading of this Act is that the filing of a tax return, whether for tax year 2018 or 2019, is the default process by which to request an advance refund. Non-filers who receive Social Security benefits do not have to file a tax return, as the IRS already has the appropriate information and method through which to issue the refund.

Subsection (g) reinforces both the role and the requirement of filing a tax return:

Identification Number Requirement
 (1) In general
 *No credit shall be allowed* under subsection (a) to an eligible individual who *does not include on the return of tax* for the taxable year –

    (A) such individual's valid identification number
    (B) in the case of a joint return, the valid identification number of such individual's spouse, and
    (C) in the case of any qualifying child taken into account under subsection (a)(2), the valid identification number of such qualifying child.

26 U.S. Code § 6428(g) (2020) (emphasis added). This subsection requires the individual to not only provide their own identifying information but also that of other family members with whom the individual is applying for benefits, allowing for multiple payments to one household as well as the ability for the IRS to track payments so as not to send multiple payments to individuals.

The following subsection (h), allows the Secretary to prescribe additional regulations "to carry out the purposes of this section, including any such measures as are deemed appropriate to avoid allowing multiple credits or rebates to a taxpayer." 26 U.S.C. § 6428(h). One such development is the web-based portal that the IRS created to allow non-filers to apply for EIP benefits without having to file a return. (ECF No. 22 at 4.)

The Court concludes that the CARES Act, like the Economic Act of 2001, contemplates the filing of a tax return for processing of EIP. In the case of the CARES Act, there are alternative processes the IRS and BIR have developed—the IRS web portal and the process of mailing a 2018 Form 1040 to the BIR for non-filers—through which individuals may affirmatively request EIP advance refunds while providing the information necessary to process their requests.

This Court finds that the plain language of both the CARES Act and the BIR's published instructions for individuals who did not file a 2018 or 2019 tax return clearly contemplate the filing of a return or authorized substitute process to affirmatively request the benefit. Significantly, Morton had not taken the requisite steps to request an EIP benefit at the time that he filed his claim against the BIR, and thus, the BIR had not yet denied his claim. As such, Morton could not claim "injury-in-fact" at the time of his filing and did not have standing to bring the claim at that time. *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch.*

*Dist.*, 832 F.3d 469, 485 n. 6 (3d Cir. 2016) ("This injury . . . was not present at the time the suit was filed . . . and thus would not suffice to create standing."). Although Morton subsequently filed a tax return, "constitutional standing cannot be cured after a plaintiff has filed suit." *St. Clair Intellectual Prop.*, 2009 U.S. Dist. LEXIS 37512, *16. A federal court must determine "whether it had jurisdiction based on the facts at the time the action was brought." *HWI Partners, LLC*, 2013 U.S. Dist. LEXIS 174942, *11.

In this case, Morton commenced the lawsuit on November 3, 2020. It is undisputed that Morton did not file his 2019 income tax return with the BIR until November 16, 2020 (ECF No. 50-1). Thus, Morton had not suffered an injury-in-fact at the time that he filed his claim. Because the Court concludes that the CARES Act contemplates the filing of a tax return—or that an individual be a recipient of social security benefits—in order to receive the advanced refund, Morton did not have standing to commence this lawsuit.

Morton does not dispute that a party must have standing at the time the lawsuit was filed in order for the Court to have subject matter jurisdiction. Instead, notwithstanding the fact that he did not file a tax return until after this lawsuit commenced, Morton argues that he has standing for several reasons. Each of these reasons are addressed below.

Morton first argues that filing a tax return is not necessary in the case of incarcerated persons in the USVI, because "[t]he USVI[,] through the BOC[,] has knowledge of the individuals in its custody, care, and control . . . . In turn, the USVI has all the information needed for the GVI to issue checks transmitting the EIPs to incarcerated individuals in the custody of the USVI and/or the BOC." *Id.* The Court finds that this argument is of no merit because there is no authority to suggest that it is the responsibility of the BIR or GVI to scour BOC databases to mine out such information. Nor would such a process be reliable since incarcerated individuals could have supplemental income from other sources which each individual filer is legally responsible to claim but about which the BOC would be unaware. In a similar vein, it would be folly to expect the IRS to gather and process information of non-filers (whether incarcerated or not) on its own without any affirmative action of the recipients.

Morton also contends that the Internal Revenue Code precludes the CARES Act from requiring a non-filing individual to file a tax return for two reasons. First, under 26 U.S.C.

§ 7422, tax returns are only required to be filed when taxes have been erroneously or illegally collected. Morton argues that it follows that because he filed no taxes, nothing has been erroneously or illegally collected and the "administrative exhaustion" of filing a return is unnecessary.[8] (ECF No. 85 at 3.) The Court agrees with Morton that § 7422 is inapplicable to the facts of this case but disagrees that this section is dispositive on the issue of whether the CARES Act requires the filing of a return as a prerequisite for EIP benefits. In this case, Morton is seeking an advance refund (or credit) with regards to 2020 income taxes to be paid on or before December 31, 2020. He is not seeking a refund on taxes erroneously or illegally collected. Second, Morton argues that requiring a person who qualifies for the gross income exclusion to file a tax return "would write 26 U.S.C. § 6012(a)(1) out of the Internal Revenue Code and tender it superfluous." *Id.* at 7. The Court finds no merit in this argument.

Morton also argues that he has standing that confers federal subject matter jurisdiction under the Equal Protection Clause of the U.S. Constitution. Pursuant to the Equal Protection Clause of the Fourteenth Amendment, Morton maintains that he has received "discriminatory treatment" as an incarcerated person, "qualif[ying] as an actual injury for standing purposes." (ECF No. 85 at 2.) Morton argues that his injury "is the denial of equal treatment resulting from the imposition of the barrier.'" *Id.* at 4 (quoting *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656, 666 (1993)).

As a threshold matter, Morton would need to demonstrate that he was treated differently than other similarly situated individuals on the basis of his incarcerated status to demonstrate discriminatory treatment. *Proctor v. James*, 811 Fed. Appx. 125, 129 (3d Cir. 2020) ("[Plaintiff's] equal protection claims fail because he did not allege that he 'has been treated differently from persons who are similarly situated.'"); *Washam v. Klopotoski*, 403 Fed. Appx. 636, 638 (3d Cir. 2010) ("To bring a successful Equal Protection claim under § 1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from similarly situated individuals."). However, Morton neither alleges nor presented any evidence that any non-incarcerated, non-income tax filers

---

[8] Morton asserts that he is a "taxpayer" under 26 U.S.C. §§ 932, 937, even though he does not pay taxes because he is a "bona fide resident" of the USVI. The Court finds this of no consequence in the analysis of standing.

received EIP advance refunds. As such, simply alleging an equal protection claim does not confer standing in this case.

Morton further contends that he has standing to assert his claims under section 80 of Title 5 of the Virgin Islands Code. This section is a provision under the laws of the Virgin Islands enacted by the Legislature of the Virgin Islands. A Virgin Islands statute cannot confer jurisdiction on a federal court. As succinctly explained by another judge of this Court: "Title 5 V.I.C. § 80 cannot be relied upon to establish standing in this [District] Court because 'in a federal trial court . . . standing to sue is determined by federal law.'" *Bryan v. Turnbull*, 291 F. Supp. 2d 386, 389 (D.V.I. 2003) (quoting *Rocks v. City of Philadelphia*, 868 F.2d 644, 647 (3d Cir. 1989)); *see also Callwood v. Enos*, 230 F.3d 627 (3d Cir. 2000) ("We have previously held that to the extent that Virgin Islands Code provisions vest jurisdiction in the District Court, they have been implicitly repealed."). The Court finds that 5 V.I.C. § 80 is of no significance in the analysis of Article III standing for federal jurisdiction.[9]

Finally, Morton argues that filing a tax return would have been futile and invites this Court to follow the decision in *Scholl* holding that incarcerated persons need not file a tax return in order to have standing to challenge the IRS's decision not to issue EIP benefits to incarcerated individuals. The court in *Scholl* found it was estimated that, in the April 10th disbursement alone, 85,861 advance refunds were issued to incarcerated individuals by the U.S. Government. On May 6, 2020, the IRS website posted an answer to a "Frequently Asked Question," stating that incarcerated individuals do not qualify for EIP benefits. The posting further explained that "individuals who received a direct deposit payment in error should repay the advance refund by submitting a personal check or money order to the IRS. Individuals who received a paper EIP check were instructed to return the voided check to the IRS." *Scholl*, 2020 U.S. Dist. LEXIS 176870, at *9. News reports indicate that the IRS "took proactive steps to intercept and retrieve the April 10th payments such as directing state corrections departments to intercept payments made to incarcerated persons and return

---

[9] Similarly, Morton contends that he has standing that derives from the GVI's "contravention of the USVI APA." (ECF No. 85 at 4.) It is unclear what this refers to. In his First Amended Complaint, ECF No. 22, Morton refers to "the Territorial equivalent of the Administrative Procedures Act," citing "Chapter 35 of Title 3 of the Virgin Islands Code: 3 V.I.C. § 911, et seq." To the extent Morton is again relying on a Virgin Islands statute to confer standing in federal court, that argument is without merit.

them to the IRS." *Id.* Thereafter, the *Scholl* plaintiffs filed a class action claim against the United States, representing a class "of all individuals who were incarcerated across the United States since March 27, 2020 and meet the eligibility requirements described in the CARES Act." *Id.*

On the threshold issue of standing, the court reasoned that "the deprivation of a monetary benefit" epitomizes the type of economic injury that establishes injury-in-fact. *Id.* at 14. Defendants argued that plaintiffs' injury was not imminent because they would not be harmed until the point at which the IRS denies their request for EIPs, citing *Coon v. Wood*, 160 F. Supp. 3d 246, 251 (D.D.C. 2016). *Id.* The court distinguished *Coon* "for the simple fact that plaintiffs allege that the IRS has already decided to deny EIPs to incarcerated persons. Moreover, the IRS readily acknowledges that it has done so." *Id.* at 16. As such, the court found that the injury was "actual and imminent" because the defendants "already denied payments to them and the injury is not merely a speculative fear about future harm that may or may not happen." *Id.* (citing *Lujan*, 504 U.S. at 560). The court found that plaintiffs satisfied the remaining prongs of standing because the "failure to disburse the EIPs to incarcerated persons is directly traceable to a decision made by the IRS and an order for injunctive relief would directly remedy plaintiffs' injury." Therefore, the Court held that plaintiffs met the requirements for Article III standing.

As mentioned above, the Third Circuit in *Golden* held that the plaintiff was required to demonstrate standing by first showing that she filed a return in order to qualify for an advance refund. *Golden*, 47 Fed. Appx. at 416-17. The Third Circuit analyzed Golden's standing with respect to the statutory procedural prerequisite of filing a tax return, whereas the Court in *Scholl* focused the analysis on the sufficiency of the harm to meet the standing requirements, essentially basing its standing analysis on the merits of the claim. However, to the extent *Scholl* does not require an individual to first file a tax return in order to be eligible for the advance refund, that decision is not reconcilable with *Golden*.[10] The Court finds the

---

[10] In his Response in Opposition to the Motion to Dismiss, Morton quotes *Birdman v. Office of the Governor*, 677 F.3d 167, 177 (3d Cir. 2012) for the proposition that this Court should follow the holding in Scholl and not require a plaintiff to have to file a tax return in order to have standing to assert a claim for an advance refund to ensure uniformity in tax cases. *Id*. at 177 (stating "Our Circuit has instructed that 'the need for uniformity of decision applies with special force in tax matters.'"). This ourt's holding does not concern the uniformity of

analysis in *Golden* persuasive[11] and appropriate on the facts of this case and holds that Morton had not met the procedural requirements of the CARES Act at the time he filed his claim.[12]

## IV.    CONCLUSION

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Woosley v. United States District Court*, 693 Fed. Appx. 144, 147 (3d Cir. 2017). Morton did not have standing at the time he filed the complaint. Therefore, this Court does not have subject matter jurisdiction to adjudicate the claim. For the reasons stated above, the Court will grant the Defendants' motion to dismiss. An appropriate Order follows.

**Dated:** December 31, 2020

/s/ *Robert A. Molloy*
**ROBERT A. MOLLOY**
**District Judge**

---

decision on *tax law*, but rather focuses on whether the plaintiff has complied with the procedural prerequisite set forth under the relevant statute. Furthermore, the decision pronounced in this Memorandum Opinion does not concern the merits of Morton's claim.

[11] *Golden* is an unpublished opinion of the Third Circuit Court of Appeals. Even though the *Golden* case is not binding authority under its rules, the Court finds the decision persuasive in light of well-settled Supreme Court precedent that the injury, for purposes of standing, cannot be hypothetical or speculative.

[12] Moreover, in this case, there is no evidence that the GVI denied any incarcerated person's claim for an advance refund prior to the commencement of this lawsuit. While the GVI did argue during the preliminary injunction proceedings that they would not have been reimbursed by the Treasury Department for advance refund payments to incarcerated individuals, the GVI later informed the Court that such payments would, in fact, be reimbursed under the GVI's agreement with the Treasury Department. This change in position by the GVI is a prime example as to why standing, and by extension, federal jurisdiction, should not be based on any anticipatory response by a prospective defendant.